UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 21-CR-0027-CVE |
| | ) | |
| CARLOS BANEGAS, | ) | |
| | ) | |
| **Defendant.** | ) | |

OPINION AND ORDER

Now before the Court are defendant's Motion to Suppress (Dkt. # 15) and Motion to

Suppress Statements (Dkt. # 16).  Defendant argues that law enforcement officials conducted an

illegal search of a motel room when serving an arrest warrant on January 5, 2021, and he also asks

the Court to suppress statements he made after he was taken into custody.  Plaintiff responds that

deputy marshals were permitted to enter the motel room to perform a protective sweep incident to

arrest, and defendant voluntarily made statements to a deputy marshal without any custodial

interrogation.  On April 5, 2021, the Court held an evidentiary hearing on defendant's motion to

suppress, and defendant's motions are ripe for adjudication.

**I.**

Carlos Banegas previously pled guilty to one count of being a felon in possession of a firearm

and ammunition, in violation of 18 U.S.C. § 922(g)(1) and 924(a).  United States of America v.

Carlos Banegas, 19-CR-010-001-CVE (N.D. Okla.).  Defendant was sentenced to 24 months

imprisonment and three years of supervised release.  Id., Dkt. # 193, at 2-3. One of the conditions

of supervised release is that Banegas "shall submit his person, residence, office or vehicle to a

search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release." Id. at 5. On September 22, 2020, defendant was released from prison and he was on supervised release in the Northern District of Oklahoma.

On January 4, 2021, the United States Probation Office (USPO) filed a petition for warrant for offender under supervision stating five alleged violations of Banegas' conditions of supervised release, including the use of illegal drugs, failing to participate in a drug treatment program, and refusing to remain on home detention. Case No. 19-CR-010-001-CVE, Dkt. # 203. An arrest warrant was issued (id., Dkt. # 204), and the United States Marshal Service (USMS) prepared to serve the arrest warrant. Deputy United States Marshal Joseph Poffel testified that he is the warrant coordinator for the United States Marshal for the Northern District of Oklahoma, and his supervisor contacted the USPO to obtain tracking data from a GPS device that defendant was required to wear as a condition of supervised release. The USPO advised Poffel's supervisor that Banegas was located at a Motel 6 near the Hard Rock Casino in Tulsa, Oklahoma. Poffel knew that Banegas was on supervised release after being convicted of possession of a firearm and ammunition by a convicted felon

Nancy Martinez, an employee of the Motel 6, testified that she was working at the front desk at noon on January 5, 2021 when she was approached by two law enforcement officers. She testified that the law enforcement officers asked her to call Banegas' room and claim that she needed to enter the room to check for a possible water leak. Martinez believed that one of the law enforcement officers was going to enter Banegas's room with her posing as a maintenance worker. Martinez made the call and went to Banegas' room, and Banegas opened the door. Banegas was alone and

she entered the room by herself, and the curtains were closed and the room was dark.  No law enforcement officers entered the room with Martinez.  Martinez walked straight to the bathroom, and she did not observe any specific objects in the room due to the darkness.  Banegas waited outside the bathroom while Martinez looked for a water leak, and she left the room after verifying that there was no water leak.  The law enforcement officers did not advise Martinez that Banegas was potentially armed or that it would be dangerous for her to enter the room.

At about 2:30 p.m. that same day, approximately 10 deputy marshals and other law enforcement officers met at the Motel 6 to serve the arrest warrant for Banegas.  Poffel entered the lobby of the motel and approached the front desk, and two female motel employees were at the front desk.  Poffel spoke to the clerk, Martinez, and showed her a picture of Banegas.  Martinez recognized Banegas and remarked that he was friendly.  Poffel learned that Banegas was staying in room 112 and the room had been rented by a woman.  Martinez testified that Banegas had been staying in the room for about a day and a half.  Toffel and several of deputy marshals went to the door of the room, and several other deputy marshals went outside to make sure that Banegas did not try to escape through a window.  The deputy marshals knocked on the door and announced their presence.  Banegas responded that he was getting out of the shower and he would come to open the door when he got dressed, but approximately 45 seconds passed and he had not opened the door. Toffel became concerned that defendant was stalling to obtain a weapon or set up an ambush. Deputy marshals rammed the door, but the door did not open.  The ram punched a hole in the door, but the door had been locked with a deadbolt and did not open.  Banegas came to open the door, and he came out of the room with his hands up.  Poffel took Banegas into custody and placed him in the front seat of his vehicle.  Members of the USMS conducted a protective sweep of the room, and no

other occupants of the room were found during the protective sweep. However, the deputy marshals did observe a mesh bag containing ammunition, a pink mirror covered with white powder, three small crystal-like rocks, and a marijuana cigarette. While Banegas was sitting in the vehicle, he asked Poffel what the marshals were looking for in the motel room, and Poffel replied that he did not know. Banegas stated that he had drug paraphernalia in the room and that he had a brown backpack in the room that contained his clothing.

Defendant was found to have violated his conditions of supervised release, and he was sentenced to eight months imprisonment and 28 months of supervised release. Case No. 19-CR-010-001-CVE, Dkt. # 228, at 2-3. In this case, defendant has been charged with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).

## II.

Defendant argues that his constitutional rights were violated in the service of the arrest warrant. First, he argues that deputy marshals did not have a sufficient factual basis to believe that he would be in the motel room when they rammed the door. Second, he argues that the deputy marshals did not have specific and articulable facts to believe that another person was in the motel room who posed a danger to the deputy marshals or another person, and the protective sweep of the motel room violated defendant's rights under the Fourth Amendment. Finally, defendant asks the Court to suppress statements he made to Poffel following his arrest.

## A.

Defendant argues that deputy marshals lacked the authority to enter the motel room, because the deputy marshals did not have a sufficient basis to believe that he was actually the person in the room when they rammed the door. Dkt. # 15, at 3. The law is clearly established that an "arrest

warrant founded on probable cause implicitly carries within it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980). The Supreme Court subsequently found that police needed a search warrant to enter the home of a third party where they believed a suspect was located. Steagald v. United States, 451 U.S. 204, 205-06 (1981). In applying these case, the Tenth Circuit has crafted a two part test to determine whether entry into a premises is valid under Payton and Steagald. "[O]fficers must have a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry." United States v. Gay, 240 F.3d 1222, 1227 (10th Cir. 2001).

The Court finds that plaintiff has met its burden to show that both prongs of the Gay test are satisfied. The order on which the warrant was based shows that defendant was living an itinerant lifestyle and he essentially had no permanent residence at the time of his arrest. United States v. Banegas, 19-CR-10-CVE, Dkt. # 203, at 3 (N.D. Okla.). However, it was known that he had been staying at "multiple unapproved locations, including motels and casinos." Id. The Tenth Circuit has noted that suspects "live with other people, they move from one residence to another," and there is no requirement that police have absolute certainty that the defendant treats the location as a permanent residence. Valdez v. McPheters, 172 F.3d 1220, 1225 (10th Cir. 1999). Defendant testified at the evidentiary hearing that he had been staying at the motel room for one and a half to two days at the time of his arrest. A woman identified as Sandra rented the room, but he had free access to the room and he was permitted to stay overnight. The evidence establishes that defendant was "living" at the Motel 6 for the purpose of serving an arrest warrant. As to the second element, the deputy marshals had a sufficient factual basis to believe that defendant was within the motel

room at the time of his arrest.  Poffel testified that GPS tracking data supplied by the USPO

established that defendant was located at the Motel 6.  Poffel spoke to the clerk, Martinez, before

he went to serve the arrest warrant, and Martinez identified defendant as the occupant of room 112.

The room was rented by a female and there was no information available to Poffel suggesting that

there was another male occupant of the room.  Deputy marshals went to the motel room and

announced their presence, and defendant responded that he was coming to the door.  Defense counsel

argues that deputy marshals only knew that a "male voice" responded to the deputy marshals, and

that the deputy marshals did not know that the person inside the room was actually the defendant.

This argument is speculative and Poffel's testimony does not suggest that defendant in any way

denied that he was the person occupying the room.  The Court finds that the deputy marshals had an

adequate factual basis to believe that defendant would be found in room 112 of the Motel 6 when

they served the arrest warrant.  Therefore, it was appropriate for the deputy marshals to attempt to

enter the motel room and serve the arrest warrant.

**B.**

Plaintiff argues that deputy marshals were authorized to conduct a protective sweep to ensure

the safety of the law enforcement officials, because the deputy marshals were in possession of

information suggesting that there was a female occupant of the room who could pose a threat to

officer safety.  Defendant argues that the deputy marshals lacked "specific and articulable" facts

supporting a rational inference that there was anyone else in the room that posed a danger to them.

In Maryland v. Buie, 494 U.S. 325 (1990), the Supreme Court stated that:

> as an incident to the arrest the officers could, as a precautionary matter and without
> probable cause or reasonable suspicion, look in closets and other spaces immediately
> adjoining the place of arrest from which an attack could be immediately launched.

> Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

Id. at 334.  The Tenth Circuit has been clear that a protective sweep "may take place only incident to an arrest."  Armijo ex rel. Armijo Sanchez v. Peterson, 601 F.3d 1065, 1072 (10th Cir. 2010); United States v. Walker, 474 F.3d 1249, 1254 (10th Cir. 2007); United States v. Torres-Castro, 470 F.3d 992, 996 (10th Cir. 2006).  The leading Tenth Circuit case concerning when law enforcement may conduct a protective sweep is United States v. Bagley, 877 F.3d 1151 (10th Cir. 2017).  The Tenth Circuit explained that there are two situations under which a protective sweep is permissible following an arrest:

> In the first situation, authorities can look in "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. [Buie, 494 U.S. at 334].  In the second situation, authorities can look elsewhere in the house upon specific, articulable facts supporting a reasonable belief that someone dangerous remains in the house.

Bagley, 877 F.3d at 1153-54.

The parties' arguments focus on the second type of protective sweep, but plaintiff's response can be reasonably be construed to argue that the protective sweep was appropriate to search areas immediately adjacent to the scene of the arrest for officer safety.  The first type of protective sweep in areas immediately adjacent to the place of arrest does not require the existence of specific and articulable facts that someone dangerous is present in the room or house, and this is simply a "cursory inspection of the area adjoining the place of arrest to prevent a danger to those at the scene." Id. at 1155.  Defendant submitted photographs of the hallway and motel room at the evidentiary hearing, and the room consisted of a short hallway leading into the room with a bathroom right next

to the doorway.  The end of the bed is plain view from the doorway and the entire bed is visible upon

taking one or two steps into the room.  The ammunition forming the basis for the criminal charge

against defendant was sitting on the bed.  There is no dispute that defendant was arrested as he

stepped through the doorway of the motel room or just outside the doorway, and the hallway of the

motel room was immediately adjacent to the area where defendant was arrested.  The deputy

marshals were permitted to make a limited entry into the room under the first type of protective

sweep under Buie, and this would have included the hallway adjacent to the location of the arrest.

The photographic evidence shows that the bed is clearly visible from the hallway of the motel room

and the ammunition was in plain view from the hallway.  Therefore, even if the deputy marshals

lacked specific and articulable facts that another person was in the room, the Court finds that the

deputy marshals could properly have conducted a limited protective sweep under the first Buie

situation and would have discovered the ammunition in plain view on the bed.

The Court will also consider whether specific and articulable facts were present that would

have permitted a broader protective sweep of the motel room.  Poffel testified that he was aware

when he served the arrest warrant that defendant was on supervised release for possession of a

firearm and ammunition.  Upon arriving at the Motel 6, Poffel spoke to the desk clerk and learned

that the room had been rented by a woman.  The deputy marshals knocked and announced their

presence, and defendant responded that he was getting out of the shower and was coming to the door.

Approximately 45 seconds passed and defendant had not opened the door, and Poffel ordered deputy

marshals to ram the door.  Poffel testified that the amount of time was substantial, and he was

concerned that the defendant had time to set up an ambush, barricade the door, or destroy evidence.

Defendant unlocked the door and came out with his hands up, but Poffel did not know whether the

room was unoccupied.  Poffel testified that he did not hear any other voices coming from the room before the door was rammed.   There is no evidence that the deputy marshals entered the room to conduct a search for evidence, and the purpose of the entry was to clear the room to make sure nobody else was in the room after defendant was arrested.

The Court finds that the deputy marshals had specific and articulable facts to support a reasonable belief that someone else posing a danger to the deputy marshals could have been present in the room.  Poffel knew that the room had been rented by a woman, not by defendant, and it took defendant approximately 45 seconds to answer the door.  During this time, another occupant of the room could have hidden somewhere in the room or the bathroom or set up an ambush.  Defendant argues that 45 seconds is not an unreasonable amount of time to get dressed after getting out of the shower, but the deputy marshals could not see defendant inside the room and did not have to accept his explanation for failing to open the door.  Deputy marshals were on notice that the room had been rented by a woman, and this is a specific, articulable fact supporting an inference that another person could have been in the room.  Combined with defendant's prior conviction for possession of a firearm, this information gave rise to a reasoanble belief that another person posing a risk of harm to the deputy marshals could have been hiding in the room.  Therefore, it was reasonable for deputy marshals to conduct a limited protected sweep of the entire motel room under second Buie situation.[1]

---

[1]    Plaintiff argues that defendant's status as a person on supervised release limits his ability to raise a Fourth Amendment challenge to the search of the motel room.  Applying ordinary Fourth Amendment principles, the Court has found that the protective sweep of the motel room was permissible, and it is unnecessary to consider plaintiff's argument that defendant had a reduced expectation of privacy.  See Dkt. 18, at 4.

## C.

Defendant argues that any statements he made following his arrest are inadmissible, because he was not given a Miranda warning before he made statements to Poffel.  In Miranda v. United States, 384 U.S. 436 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444.  Under this rule, a court must suppress a statement, even if voluntary, if a proper warning was not given before police initiated custodial interrogation of a suspect.  United States v. Patane, 542 U.S. 630 (2004); United States v. McCurdy, 40 F.3d 1111, 1117 (10th Cir. 1994).  Once a Miranda warning has been given, police must refrain from interrogating a suspect if he unambiguously invokes his right to silence.  Michigan v. Mosley, 423 U.S. 96, 101 (1975).  However, a suspect impliedly waives his right to remain silent if he receives a Miranda warning, understands the Miranda warning, and makes an uncoerced statement to police.  Berghuis v. Thomkins, 560 U.S. 370, 384-85 (2010).  The fact that a defendant is in custody does not make every exchange between a police officer and a suspect an interrogation, and "words or actions on the part of the police normally attendant to arrest and custody are not interrogation."  United States v. Sanchez, 983 F.3d 1151, 1162 (10th Cir. 2020) (quoting United States v. Yepa, 862 F.3d 1252, 1257 (10th Cir. 2017)).  Even if a Miranda warning has not been given, spontaneous statements made by a suspect that are not in response to any interrogation are admissible.  United States v. Pettigrew, 468 F.3d 626, 635 (10th Cir. 2006).

The evidence does not establish that defendant was subjected to custodial interrogation or that Poffel engaged in any conduct that could reasonably have elicited any type of statement from

defendant, and <u>Miranda</u> does not provide a legal basis for the suppression of defendant's statements. The evidence establishes that Poffel took defendant to his vehicle outside of the Motel 6, and Poffel acknowledges that he did not give defendant a <u>Miranda</u> warning. However, he testified that he had no intention of interrogating defendant and he did not ask defendant any questions. Poffel received a radio communication from deputy marshals about the protective sweep, and defendant asked Poffel what the deputy marshals were looking for in the room. Poffel said that he did not know, and defendant voluntarily stated that he kept a brown backpack in the room that contained his clothes and drug paraphernalia. There is no evidence that Poffel interrogated defendant or even initiated a conversation with him, and the mere fact that defendant heard radio communications would not tend to elicit an incriminating response from him. Defendant argues that any statements he made following his arrest are tainted by the illegality of the search of the motel room, and he claims that he was not given a <u>Miranda</u> warning before he made statements to the deputy marshal. Dkt. # 16, at 3. The Court has not found that defendant's constitutional rights were violated by a limited protective sweep of the motel room, and there is no prior illegality that could have tainted the admissibility of his voluntary and spontaneous statements.

**IT IS THEREFORE ORDERED** that defendant's Motion to Suppress (Dkt. # 15) and Motion to Suppress Statements (Dkt. # 16) are **denied**.

**DATED** this 8th day of April, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE